**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
LUIS GARCIA,                                             :
                                                         :
                      Petitioner,   :      07 Civ. 2974 (HB)(FM)
                                                         :
     -against-                                         :
                                                         :      <u>OPINION & ORDER</u>
JOHN BURGE,                                              :
                                                         :
                      Respondent.   :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Petitioner Luis Garcia ("Petitioner" or "Garcia") brings this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254, to challenge his conviction on one count of Murder in the First Degree and four counts of Intentional Murder in the Second Degree following a jury trial in Supreme Court, Bronx County.

       Petitioner claims that: (1) his Fourth Amendment rights were violated because the police arrested him without probable cause or a warrant and searched his apartment without adequate consent; (2) his Due Process and Confrontation Clause Rights were violated by the admission of a hearsay statement at trial; (3) his rights under New York's Criminal Procedure Law ("CPL") were violated by the suspension of jury deliberations for more than twenty-four hours; and (4) his sentence is unduly harsh and excessive.

       On February 28, 2008, Magistrate Judge Frank Maas issued a Report and Recommendation ("R&R"), in which he recommended that the petition be denied on all counts and that a certificate of appealability should not issue because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Petitioner made timely objections to the R&R. Upon this Court's careful review of all the submissions, the petition is denied and the R&R is adopted.

## I. BACKGROUND

       Petitioner's conviction arose from his role in murders in the Bronx on the night of March 2, 2000. The case was tried before Justice Martin Marcus in Supreme Court, Bronx County, who on April 4, 2003 sentenced Petitioner to terms of imprisonment that added up to life imprisonment without parole.

1

*The Five Murders*

Magistrate Judge Maas found that the evidence at trial permitted a reasonable juror to find that Petitioner and an accomplice[1] murdered five people on March 2, 2000: Eduardo Santos ("Eduardo"), Ishmael Santos ("Ishmael"), Irvin Aquilar ("Irvin"), Denise Santos ("Denise"), and Evelyn Santos ("Evelyn"). R&R 2-3. The bodies of Eduardo, Ishmael (Eduardo's fourteen-year old nephew), and Irvin (husband of Denise Santos) were found in the apartment of Eduardo Santos. Trial Transcript ("Tr.") 79, 112-14. Denise's body was found a few blocks away, where she and Irvin had shared a residence. *Id.* 488, 517-18. Finally, Evelyn's body was discovered in the elevator of her apartment building. *Id.* 441-42. A ballistics expert concluded that a single Sig-Sauer nine millimeter pistol fired all of the bullets that were recovered.[2] R&R 4 (citing Tr. 1554-63, 1574, 1577-83, 1586, 1589-94); Resp't's Statement of Law 7.

*The Investigation and Arrests*

In late 1998 or early 1999, Eduardo loaned a large sum of money to Petitioner. R&R 4; Tr. 763. Petitioner failed to repay the loan despite Eduardo's requests. Tr. 670-71, 768-70. Petitioner and Pizarro were known to have been at the home of Denise and Irvin on March 2, 2000, and thus the investigation focused on them. R&R 4; Tr. 608-09.

Several witnesses testified that Petitioner drove a Pontiac Firebird with Florida license plates. Resp't's Statement of Law 5. The NYPD learned that Petitioner lived in Miami with Guillermina Mejia ("Mejia"), the owner of a Pontiac Firebird with Florida registration DH913E. The NYPD issued a "be-on-the-lookout" ("BOLO") alert to law enforcement for the Pontiac Firebird. *Id.* 5. Later, after Evelyn's son identified a photograph of Petitioner as Evelyn's ex-boyfriend, a second BOLO was issued for Petitioner. *Id.* Additionally, Miami detectives also learned that Mejia was a licensed pistol owner. *Id.*

On March 4, 2000, a Florida police officer witnessed Petitioner and Pizarro cleaning the interior of the Firebird in front of Petitioner's Miami residence. Tr. 884-84, 889-902. When they finished, Pizzaro threw some clothing into a nearby dumpster. *Id.* When Petitioner and Pizzaro started to drive away, the police stopped them and saw jewelry in the front seat of the car and noticed four of Denise's credit cards stuck to Petitioner's wallet when he produced his driver's license. *Id.* 904, 910, 924-27. The police also found in Petitioner's wallet a bill of sale for the Sig-

---

[1] The accomplice, Jose Cosme Pizarro ("accomplice" or "Pizzaro"), was named in the same indictment but was tried separately. He was convicted of four counts of Murder in the Second Degree, for which he was sentenced to aggregate indeterminate prison terms of seventy-five years to life. *See People v. Pizarro*, 24 A.D.3d 309 (N.Y. App. Div. 2005).

[2] Denise's body was found with a knife in her neck and fourteen stab wounds. Tr. 488, 504-05, 517-28.

2

Sauer gun and a paper with New York City police scanner codes and precinct numbers on it.  *Id.* 1290-92, 1522-23.  After the officers arrested Petitioner and Pizarro, they found more of the victim's jewelry on Pizzaro's person.  *Id.* 1297-1303.

Florida police officers searched Mejia and Petitioner's apartment.  *See* R&R 6 (citing Tr. 918, 994-96).  This search resulted in the seizure of bullets, jewelry, and cash.  Tr. 1010-15.  The detectives noticed plastic bags containing metal pieces on the stove, but stopped the search when Mejia became uncooperative.  *Id.* 1086-88.  The police subsequently obtained search warrants for Petitioner's car and apartment.  R&R 6.  During the ensuing search, the police examined the plastic bags on the stove and discovered cut-up pieces of the nine millimeter Sig-Sauer pistol that was used in the murders.  Tr. 1344-45, 1354-57.  The police also discovered a DeWalt saw and grinder along with a receipt for its purchase dated March 4, 2000, a safe from Irvin's house that had been cut open and hidden inside a bag from a laundromat in the Bronx that Denise and Irvin had frequented, and some of the victims' jewelry including a necklace that was stained with blood that matched Denise's blood to the exclusion of one trillion individuals.  *Id.* 684-85, 1312-14, 1317-19, 1363, 1371, 1382, 1634-35.

*Petitioner's Defense*

Petitioner was the sole defense witness.  R&R 7.  He testified that he and Pizarro drove to New York in the Firebird so that Pizzaro could facilitate a drug deal.  Tr. 1830, 1833, 2136-37.  Pizzaro convinced Petitioner to bring along his nine millimeter pistol, his police scanner, and the radio frequency codes for several Bronx police precincts.  *Id.* 1833-38.  After Petitioner and Pizzaro arrived in New York, Pizarro obtained two kilos of cocaine from his source, which he intended to sell to Irvin for about $50,000.  *Id.* 1854-57.  Petitioner testified that when he and Pizzaro went to Eduardo's apartment to complete the transaction, while he was parking the car, Pizzaro entered the apartment with Irvin and Eduardo, but before Petitioner could enter the apartment, Pizzaro rushed out of the building, saying, "Let's get out of here."  *Id.* 1881-88.  Pizzaro explained that the drug deal went bad and he had shot Eduardo and Irvin.  *Id.* 1887-88.  Petitioner further testified that Pizzaro threatened to kill him unless he followed Pizzaro's directions, which included returning to Eduardo's apartment to retrieve the drugs that Pizarro had accidentally left behind.  *Id.* 1888-91.  Once inside, Petitioner discovered that Pizarro had also killed Ishmael, and he watched as Pizarro stabbed Irvin, who had appeared to have been dead before the attack began.  *Id.* 1892-96.  Later, according to Petitioner, Pizzaro forced Petitioner to take him to Denise's home and Evelyn's apartment, where Pizzaro murdered them.  *Id.* 1929-30, 1946-47.  Petitioner claimed that he did not

3

attempt to stop Pizarro or try to escape because he was afraid Pizarro would kill him. *Id.* 1930, 1947.

*Pretrial Proceedings*

Justice Donnino held a combined *Mapp-Dunaway-Huntley* hearing on various dates between May 16 and August 1, 2001. R&R 8 (citing Ex. 2 to Resp't's Br. on Appeal ("Resp't's Br.") 3 n.2). At the conclusion of the hearing, which resulted in a transcript of over 3,600 pages, Justice Donnino denied Petitioner's Fourth Amendment claims but suppressed certain statements that Petitioner made after his right to counsel attached. *Id.* at 8. Subsequently, Justice Marcus granted the People's motion in limine to introduce into evidence several statements that Evelyn had made to her friend Elizabeth Caraballo ("Caraballo") during a telephone conversation on the day of the murders, pursuant to the hearsay exception recognized in *Mutual Life Insurance Company of New York v. Hillmon*, 145 U.S. 285 (1892), for statements of future intent. Caraballo testified that Evelyn had called her to cancel their plans to meet that evening because she intended to go out with Petitioner instead. *See* Resp't's Br. 9. Specifically, Caraballo testified that Evelyn

> called me to tell me how happy she was because Eduardo had . . . told her to go over to his—to meet him at his Radcliffe house . . . . When she got there, Eduardo wasn't there, so she figured maybe he was next door at Denise's house. . . . And when she went over to Denise's house and she knocked on the door, she said, guess who opened the door . . . Louie [Petitioner] opened the door . . . but did not let her go inside the house. And then he told her that he was going to see her that night.

Tr. 608-09. Petitioner only objected to this testimony to the extent that Caraballo proposed to testify that Evelyn told her she had seen Petitioner at Denise's house the afternoon before she was killed. R&R 9 (citing Pet'r's Br. at 44). Justice Marcus held that this testimony "concerning the circumstances in which the [future] plan was made" was admissible.

*Jury Deliberations, Verdict, and Sentence*

On Friday, March 7, 2003, two jurors failed to appear for deliberations which had begun earlier in the week. Tr. 2804, 2882-85. Juror Number Two telephoned to report that her child had been assaulted and needed to go to the hospital, and Juror Number Ten called in sick. The Court denied Petitioner's motion for a mistrial on the ground that Juror Number Two was "grossly unqualified" because she would not be able to concentrate when she returned, and adjourned proceedings until Monday, March 10, 2003. *Id.* 2885, 2889, 2895. On March 10, before deliberations resumed, Justice Marcus questioned Juror Number Two and concluded that she remained qualified to serve as a juror. *Id.* 2901-05.

Petitioner then moved for a mistrial on the previously unstated ground that Section 310.10(2) of the CPL was violated when jury deliberations were suspended for more than twenty-four hours.  *Id.* 2907-08.  Justice Marcus rejected this motion as untimely.  *Id.* 2908-10.

On March 17, 2003, the jury found Petitioner guilty of one count of Murder in the First Degree (for his role in killing Denise and causing the death of Evelyn as part of the same criminal transaction); four counts of Intentional Murder in the Second Degree (in connection with the deaths of Eduardo, Evelyn, Ishmael, and Irvin); and three counts of Felony Murder in the Second Degree (in connection with the deaths of Eduardo, Irvin, and Denise).  *See* Tr. 3014-17.  On April 4, 2003, Justice Marcus sentenced Petitioner to life without parole on the Murder in the First Degree count, consecutive terms of twenty-five years to life on each of the four counts of Intentional Murder in the Second Degree, to run concurrently with the sentence for Murder in the First Degree, and consecutive terms of twenty-five years to life on each of the three counts of Felony Murder in the Second Degree, to run concurrently with the other sentences.  *See* Pet'r's Br. 95-96.

*Direct Appeal*

Petitioner appealed his conviction to the Appellate Division, First Department, on the grounds that: (1) the police lacked probable cause for his warrantless arrest; (2) Mejia did not voluntarily consent to the search of Petitioner's apartment; (3) his Due Process and Confrontation Clause rights were violated by the admission of Caraballo's testimony concerning Evelyn's statement; (4) the suspension of jury deliberations exceeded the statutory twenty-four-hour time limit under CPL § 310.10(2); and (5) his sentence was unduly harsh and excessive.  R&R 11 (citing Pet'r's Br. ii).  On December 29, 2005, the Appellate Division, First Department unanimously affirmed Petitioner's conviction.  *People v. Garcia*, 24 A.D.3d 308, 308 (N.Y. App. Div. 2005).  The court concluded that Justice Donnino properly denied Petitioner's motion to suppress the statements and physical evidence because probable cause was "established through a very lengthy chain of incriminating circumstances."  *Id.*  Additionally, the Court held that the trial court properly found that Mejia had voluntarily consented to searches of her car and the residence she shared with Petitioner.  *Id.*  Moreover, the Appellate Division, First Department found no basis for disturbing the "court's credibility determinations" that were supported in the record.  *Id.* (citing *People v. Prochilo*, 41 N.Y.2d 759, 761 (N.Y. 1977)).  The court also found that Petitioner waived his right to argue for a mistrial on the ground that the trial court improperly suspended jury deliberations for more than twenty-four hours.  *Id*.  Finally, the Court rejected Petitioner's hearsay argument and found no basis for reducing his sentence.  *Id*.

*Petition for Writ of Habeas Corpus*

The Petition, dated March 13, 2007, was timely received by the Pro Se Office of this Court on March 19, 2007. In his Petition, Petitioner reasserts each of the five claims that he made before the Appellate Division in state court. The matter was assigned to me and referred to Magistrate Judge Maas for a R&R. On February 28, 2008, he recommended that this Court deny the Petition. On May 27, 2008, Petitioner submitted his Objections to the R&R

## II.  DISCUSSION

*Standard of Review*

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. *Herrera v. Collins*, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in pertinent part that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

As the Second Circuit noted in *Jones v. Stinson*, 229 F.3d 112 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" *Id.* at 119. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. *Id.* at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to

6

all reasonable jurists.'" *Stinson*, 229 F.3d. at 119 (quoting *Francis S. v. Stone*, 221 F.3d 100, 109 (2d Cir. 2000)).

To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams*, 529 U.S. at 389.

Finally, pursuant to 28 U.S.C. § 636(b)(1), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

### Fourth Amendment Claims

Petitioner's first two claims are that the police arrested him without probable cause and searched his apartment without adequate consent. "[W]e conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). Thus, a Fourth Amendment claim may be upheld on habeas review only when (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations, or (2) there is a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (*en banc*), *cert. denied,* 434 U.S. 1038 (1978)).

Here, Magistrate Judge Maas found that the State of New York provided Petitioner and similarly situated defendants with the necessary corrective procedures through CPL § 710. *See Capellan*, 975 F.2d at 70 n.1 ("[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [CPL] § 710.10 et seq. (McKinney 1984 & Supp. 1988), as being facially adequate.") (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Therefore, to secure habeas relief, Petitioner must demonstrate that there was a "disruption or obstruction" rising to the level of an "unconscionable breakdown" of state procedures. *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

Magistrate Judge Maas found that the trial court "conducted an unusually thorough pretrial suppression hearing" and since Petitioner was given a "full and fair opportunity to litigate his Fourth Amendment claims prior to trial, they cannot be entertained by this Court." R&R 25.

7

Petitioner maintains that although the pretrial hearing was lengthy, it was not fair.  Petitioner's Objections to R&R 6.  However, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  *Herrera*, 506 U.S. at 401.  This Court adopts Magistrate Judge Maas' view that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.  Petitioner litigated his claims in motion court, before the trial judge, and before the Appellate Division, First Department.  *See People v. Garcia*, 24 A.D.3d 308, 308 (N.Y. App. Div. 2005).  The First Department found that "[p]robable cause was established through a very lengthy chain of incriminating circumstances" and that "[w]hile each piece of information, viewed singly, might have had an innocent explanation, the information provided probable cause when viewed as a whole."  *Id.* (citing *People v. Bigelow*, 66 N.Y.2d 417, 423 (N.Y. 1985)).  Moreover, the state Appellate Division also found that Mejia voluntarily consented to searches of her car and of the apartment she shared with Petitioner and that there is no basis for "disturbing the court's credibility determinations, which are supported by the record."  *Id.* (citing *People v. Gonzalez*, 39 N.Y.2d 122, 128-31 (N.Y. 1976); *People v. Prochilo*, 41 N.Y.2d 759, 761 (N.Y. 1977)).  Given Petitioners' extensive opportunities to litigate his Fourth Amendment claims, it is not in this Court's purview to review them further.

### *Confrontation Clause Claim*

Petitioner also claims that the admission of a portion of Evelyn's statement to a prosecution witness, Caraballo, violated the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  Specifically, Caraballo testified that Evelyn had told her that she saw Petitioner at Denise's home earlier in the day.  Magistrate Judge Maas found that Petitioner is not entitled to habeas relief on this ground.  R&R 15.

The state court adjudicated this matter on the merits and granted the People's *Hillmon* application.  R&R 16.  The state court focused on the reliability of Evelyn's forward-looking statements to Caraballo about her plans for the evening and the circumstances giving rise to those plans.  *See* Resp't's Mem. of L. 10; Tr. 608-09.  Since there was a state court adjudication on the merits, the deferential standard of review under 28 U.S.C. § 2254(d) applies.  *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

The Confrontation Clause generally bars the use of "testimonial" statements by an unavailable declarant, regardless of reliability, unless the defendant had a prior opportunity to cross-examine the declarant about such statements.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  The Supreme Court later stressed that the admission of a hearsay statement violates the Confrontation Clause only if the statement is "testimonial."  *Davis v. Washington*, 547 U.S. 813,

821 (2006). Although the Supreme Court did not "spell out a comprehensive definition [of the term] testimonial," the Supreme Court did contrast an "off-hand, overheard remark," which would not qualify as testimonial, with "a statement produced through the '[i]nvolvement of government officers' and with an 'eye towards trial,'" which would be testimonial because it "presents [a] 'unique potential for prosecutorial abuse.'" *United States v. Feliz*, 467 F.3d 227, 232 (2d Cir. 2006) (quoting *Crawford*, 541 U.S. at 51, 56 n.7, 68). The Second Circuit has defined "testimonial" as "a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004).

This Court agrees with Magistrate Judge Maas that the statements made by Evelyn to Caraballo were not testimonial. *See, e.g., id.* at 229. Therefore, the admission of portions of Evelyn's statements to Caraballo about her face-to-face meeting with Petitioner did not violate *Crawford*.

In addition to his Confrontation Clause claim, Petitioner argues that the admission of Caraballo's testimony about an alleged meeting between Evelyn and Petitioner was improper because it did not meet the foundational safeguards established by *People v. James*, 93 N.Y.2d 620, 634-35 (N.Y. 1999).[3] The Appellate Division rejected this claim. *Garcia*, 24 A.D.3d at 308.

The Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[T]he writ would issue *only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original). The Supreme Court has explained that for an evidentiary error to rise to this level, it must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation omitted). The Circuit has explained that the evidence must be such that reasonable doubt would have existed on the record without it. *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998).

Indeed, as found by Magistrate Judge Maas, the challenged statements were admissible under *Crawford* and therefore did not constitute an error of constitutional magnitude. *See* R&R 19.

---

[3] The *James* foundational safeguards include that (1) the declarant is unavailable, (2) the statement of the declarant's intent unambiguously contemplates some future action by the declarant either with the defendant or which requires the defendant's cooperation, (3) "to the extent that the declaration expressly or impliedly refers to a prior understanding or arrangement with the nondeclarant defendant, it must be inferable under the circumstances that the understanding or arrangement occurred in the recent past and that the declarant was a party to it or had competent knowledge of it," and (4) there is evidence of reliability and evidence that the intended future action was likely to have occurred. 93 N.Y.2d at 634-35.

9

As Justice Marcus made clear, the admission of Evelyn's explanation of how her date with Petitioner came about was proper under state law. *Id.* 19. However, even if Petitioner were able to establish that the admission of Evelyn's statement was in error, that error was harmless because Petitioner himself testified that he had made plans with Evelyn to have dinner when the two met at Denise's house. Tr. 1860-61, 2310-12.

Petitioner also alleges that he was prejudiced by the admission of the voicemail message containing inaudible voices talking in Spanish and police scanner transmissions. Petitioner emphasizes that this message was replayed for the jury the day before they returned a guilty verdict. As Magistrate Judge Maas explained, the audio tape was received in evidence pursuant to a limiting instruction,[4] which prohibited the jurors from considering the voices for any purpose other than to determine the number of persons involved in the conversation. R&R 20 n.9 (citing Tr. 1277). Petitioner has not shown why the admission of this evidence was in error. Therefore, even if this claim had been properly exhausted, which it was not,[5] Petitioner would not be entitled to habeas on this ground, absent a showing that the contents of the tape deprived Petitioner of a fair trial. *See Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988).

*CPL § 310 Claim*

Petitioner contends that the trial court suspended jury deliberations in excess of the twenty-four-hour limit set forth in CPL §310.10(2). R&R 21. Petitioner has failed to show that the state court's decision to suspend jury deliberations longer than the twenty-four-hour state-imposed limit was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). In addition, there is no comparable federal law that limits the period in which a jury's deliberations in a criminal case may be suspended. Therefore, Petitioner is not entitled to federal habeas relief on this ground.

*Excessive Sentence Claim*

Petitioner's final claim is that his sentence of life without parole is "unduly harsh and excessive." Petitioner was convicted of five murders, including one count of Murder in the First Degree, for which the maximum sentence is life imprisonment. *See* N.Y. Penal Law § 70.00(2)-(5);

---

[4] The jury must be presumed to have followed this instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (*citing Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

[5] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Resp't's MCase 1:02-cv-02074-MHB   Document 27   Filed 01/15/09   Page 11 of 11

Resp't's Mem. 23 within it. "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Therefore, this Court adopts Magistrate Judge Maas's view that Petitioner is not entitled to habeas relief on the ground that his sentence was excessive. R&R 22.

## III. CONCLUSION

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Maas is adopted and the petition for a writ of habeas corpus is DENIED. The Clerk is directed to close this case and remove it from my docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

**IT IS SO ORDERED**
**New York, New York**
**January 15, 2009**

_____
U.S.D.J.

11